_____

Nos. 15-5018
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

HOME CARE ASSOCIATION OF AMERICA, *et al.*,
PLAINTIFFS-APPELLEES,
v.
DAVID WEIL, *et al.*,
DEFENDANTS-APPELLANTS.
_____

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA
_____

**MOTION FOR STAY OF MANDATE
PENDING FILING OF PETITION FOR WRIT OF CERTIORARI**

| | |
|---|---|
| William A. Dombi<br>Center For Health Care Law<br>228 Seventh St, SE<br>Washington, D.C. 20003<br>202.547.5262<br>wad@nahc.org | Maurice Baskin<br>Littler Mendelson, P.C.<br>1150 17th Street N.W.<br>Suite 900<br>Washington, DC  20036<br>202.842.3400<br>mbaskin@littler.com |

Attorneys for Appellees

Appellees Home Care Association of America, *et al.*, hereby move pursuant to FRAP 41 and Circuit Rule 41 for an order staying the issuance of this Court's mandate in the above-captioned matter, pending the filing by Appellees of a petition for writ of certiorari in the United States Supreme Court. This motion is made on the grounds that the certiorari petition will present substantial questions and there is good cause for the issuance of a stay.

## I. PROCEDURAL POSTURE OF THE CASE

This Court issued its judgment reversing the district court on August 21, 2015. Appellees intend to file a petition for writ of certiorari in the Supreme Court within the ninety (90) day period permitted by law. However, absent a stay, this Court's mandate will issue on October 13 by operation of Rule 41, meaning that the case will be remanded to the district court with instructions to issue summary judgment in favor of the Appellants. Absent a stay beyond October 13, therefore, the previously vacated Home Care Rule will go into effect before the Supreme Court has the opportunity to act on Appellees' petition. As the district court found, allowing the new Rule to go into effect will cause irreparable harm to the operations of thousands of home care employers, millions of home care

employees, elderly and disabled consumers, and state Medicaid funding programs across the country.

Counsel for Appellees has conferred with counsel for Appellants regarding this motion. Appellants are opposed to the motion.

### II. Appellees' Petition For Writ Of Certiorari Will Present Substantial Questions.

This Court's decision constitutes the first time in the 77-year history of the Fair Labor Standards Act (FLSA) that a court has allowed the Department of Labor to deny a class of employers the right to avail themselves of a Congressionally mandated exemption whose terms apply to their employees. In disagreement with the district court, this Court concluded that the Supreme Court and Congress intended to allow this result, based on what Appellees respectfully submit is a misreading of the Supreme Court's opinion in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007). This Court's reversal of the district court's judgment as to the meaning of the Supreme Court's holding in *Coke* raises a substantial question that only the Supreme Court itself can definitively answer.

Under the "substantial question" standard applied by this Court (and others), a stay of the mandate is warranted if there is a "reasonable probability" of the Supreme Court granting certiorari and reversing. *See*

3

*Books v. City of Elkhart*, 239 F.3d 826 (7th Cir. 2001), *quoted in NextWave Personal Commc'ns v. FCC,* No. 00-1402, 2001 U.S. App. LEXIS 19617, at *4 (D.C. Cir. Aug. 23, 2001); *see also Priests for Life v. U.S. Dep't of Health & Human Servs.,* No. 13-5368 (D.C. Cir. June 10, 2015); *Munaf v. Geren*, No. 06-5324, 2007 U.S. App. LEXIS 11283 (D.C. Cir. May 9, 2007) (staying this Court's mandate even though the Court had rejected the movants' claims on the merits). The "substantial question" standard under Rule 41 does not require this Court to find that a movant for stay is likely to succeed on the merits.[1]

In the present case, the issues have already been shown to be "debatable among jurists of reason." *Barefoot v. Estelle*, 463 U.S. at 893 n.4. The district court here found that the Supreme Court's decision in *Coke* upholding the validity of the Department's former home care rule could not be interpreted as authorizing the Department to eviscerate the Congressionally mandated home care exemption in its new rule (JA 40).

---

[1] As the Supreme Court has explained in describing its similar standard: "[The defendant] need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)." *See also Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J.).

4

This Court's opinion obviously disagreed with the district court's view. But the probability of merits review by the Supreme Court to resolve this question is particularly likely because the Supreme Court has already found the issue of companionship exemption from overtime to be sufficiently important to grant review in the *Coke* case. This Court's application of the *Coke* decision in a manner that achieves the opposite result from the Supreme Court's holding is clearly "an important question of federal law that has not been, but should be, settled by th[e] [Supreme] Court." SUP. CT. R. 10(c); *see also* Shapiro, et al., *Supreme Court Practice* § 4.11, at 263 (10th ed. 2013) ("The importance of the issues involved in the case as to which review is sought is of major significance in determining whether the writ of certiorari will issue.").

Appellees respectfully submit that the language of the *Coke* opinion does not bear the weight placed upon it by this Court's decision. The *Coke* Court's discussion of the "gaps" in some of the Act's statutory language, solely in the context of upholding the Department's previous definition of companionship employees, did not authorize the Department to adopt an entirely different method of implementing the statutory exemption, a method

that violates the plain language of separate provisions of the FLSA that were never addressed by the Supreme Court.[2]

Again, this Court has made the judgment that the *Coke* decision does authorize the Department's new Rule. But a substantial question certainly exists as to whether the Supreme Court intended to authorize the Department to discriminate against an entire class of employers, comprising more than 90% of the home care industry, by selectively excluding such employers from availing themselves of the statutory exemptions in 213(a)(15) or 213(b)(21) that otherwise continue to apply by their terms to "any employees" under the Department's new rule.

This Court's treatment of the legislative history of the companionship exemption (Op. at 15) also raises a substantial question that the Supreme Court must decide; indeed, Appellees submit that the Supreme Court has already rejected in *Coke* the interpretation of Congressional intent adopted by this Court's opinion. Respondent Evelyn Coke made essentially the

---

[2] Contrary to this Court's opinion, it should be irrelevant whether the Department claims to derive its rulemaking authority from Section 213(a)(15), 213(b)(21), or from Section 29(b). (Op. at 13). None of these provisions give the Department the authority to impose the overtime requirements of Section 207 on any employers whose employees fall within the scope of the statutory exemptions of Section 213. The Supreme Court in *Coke* certainly never so held, because the rule at issue in *Coke* did not purport to exclude any employers from availing themselves of any statutory provisions.

6

same arguments to the Supreme Court regarding the legislative history of the companionship exemption that this Court has now repeated in its opinion. But the Supreme Court rejected Coke's (and now this Court's) reading of legislative history, stating: "We do not find these arguments convincing." 127 S. Ct. at 2346.

Also contrary to this Court's opinion (at 15), the Supreme Court in *Coke* did not need to address (and so did not address) the Congressional reenactment doctrine, in order to hold that the previous home care rule was valid and binding. A substantial question therefore exists as to whether Congress's failure to overturn the Department's previous rule both before and after the *Coke* decision should be deemed to be persuasive evidence of Congressional intent to keep the old rule in place.

Finally, a substantial question exists as to whether the Department's new rule violates *Chevron* Step II and/or is arbitrary and capricious. The new rule plainly discriminates against more than 90 percent of the home care industry at a time when state funding mechanisms are woefully inadequate to meet the increased costs that will result from the new Rule. The Supreme Court was made aware of changes to the home care industry that allegedly occurred between 1974 and the Court's 2007 decision in *Coke*, yet the Court found that Congress was primarily interested in maintaining affordability for

7

protecting elderly and disabled consumers. In the absence of any material change to companionship job duties since the Supreme Court's decision in *Coke*, a substantial question remains as to whether that Court will support the radical and expensive changes to home care that are compelled by the Department's new Rule.

The Department has yet to explain why home caregivers who perform exactly the same job duties, whether they are viewed as "professional" or as "casual," should be treated as exempt when employed by the direct consumer but non-exempt when employed by a third party. The work performed is identical and the exemption should apply equally to both. In this context, the Department's exclusion is arbitrary and the Supreme Court should be given the opportunity to review it.

**III.    Good Cause Exists For a Stay Of This Court's Mandate**.

Good cause for a stay of the mandate is warranted where Plaintiffs can show a likelihood of irreparable harm and/or that a stay is in the public interest. *Books*, 239 F.3d at 829. *See also* Knibb, *Federal Court of Appeals Manual* 34:13, at 924 (6th ed. 2013). In *American Gas Ass'n v. FERC*, 912 F.2d 1496, 1519 (D.C. Cir. 1990), after ruling against the moving party on the merits, this Court stayed its mandate so that the status quo would not have to be "unscramble[d]" until "the review process comes to a complete

end." For similar reasons, good cause exists to stay the Court's mandate in the present case.

Prior to vacating the new Rule, the district court found that the Plaintiffs would be irreparably harmed if the rule were allowed to go into effect. (JA 45, 132). This finding, which remains undisturbed by this Court's opinion on the merits, was based upon multiple sworn affidavits submitted by Plaintiffs (and the Department) from all sectors of the home care industry demonstrating the myriad adverse impacts of the new Rule. (Dist. Ct. Dkt. #23, 28). Nothing has changed since the district court vacated the rule in January. If the new Rule is allowed to go into effect in advance of Supreme Court review, the industry will be harmed in all of the previously identified ways, and it will be extremely burdensome if not impossible to "unscramble" the home care system in the event that the Supreme Court grants Appellees' petition.

Appellees' evidence of irreparable harm in the record of this appeal includes detailed and specific testimony from multiple third-party employer representatives describing unrecoverable costs that will be imposed on them by the new Rule. (Dist. Ct. Dkt. #23, 28, Dombi Affidavit, Cardillo Affidavit, Foss Affidavit, Salerno Affidavit). In addition, representatives from the disabled community testified to the forced elimination of many

9

companion care services under the new Rule, with consequent loss of goodwill between consumers and Plaintiffs' member employers that itself constitutes irreparable harm. (Dkt. #23, Buckland and Darling Affidavits).

The disabled home care consumers further testified that they will in many cases no longer be able to receive continuous services from a single caregiver, because working hours will have to be capped to control overtime compensation costs. Indeed, current recipients of home care spoke from personal experience about the likelihood of losing access to such care altogether, leaving them no choice but institutionalization. (Id., Buckland Affidavit). Others reported that some caregiving services had already been lost merely because of the imminent threat of the new Rule in 2014. (Darling Affidavit). The replacement of full-time caregivers with multiple, part-time caregivers, another inevitable result of the new Rule, has been shown to create confusion and stress for home care consumers, particularly those suffering from dementia and similar illnesses. The increased number of "handoffs" among and between caregivers will also reduce the quality of care and increase the amount of waiting time for new caregivers. (Id.).

The Secretary of the Kansas Department for Aging and Disability Services (KDADS) submitted a sworn affidavit testifying to the inadequate

Medicaid funds available to pay the non-recoverable costs of the new Rule as well as the discontinuity of care and related services befalling both public and private home care agencies and consumers once the new Rule goes into effect. (*Id*., Bruffett Affidavit).

Appellees have also provided evidence of additional disruption of the home care industry that has already taken place in states such as California and New York.  These additional affidavits included a state-wide survey demonstrating the adverse impact of recent changes in California's overtime exemption. (Dist. Ct. Dkt. #28, Salerno Affidavit).[3]  The overwhelming majority of home care providers surveyed in California have lost significant percentages of their customers either because the home care consumers cannot afford the increased costs resulting from the partial loss of the overtime exemption, or because elderly and disabled customers have found the increased number of part-time caregivers to be harmful to their care needs, or for both reasons. (*Id*.). The California state survey also found reductions in overall weekly pay rates to employees at the vast majority of home care workplaces, along with many lost jobs due to customer

---

[3] California's changes to the overtime exemption were and are far less severe than the Department's new Rule. Unlike the new Rule, California continues to exempt overtime up to 48 hours per week, among other important differences.

terminations, and significant percentages of reported employee dissatisfaction. (*Id*.).

The record before the district court also included a declaration from the Executive Vice President of the Home Care Association of New York who is familiar with the New York State Medicaid program's lack of preparedness to incorporate the increased costs from the new Rule, which has created a serious risk to patient access and continuity of care, as well as home care agency operations if the new Rule is allowed to take effect. (Id., Cardillo Affidavit).

Thus, whichever way the Appellees turn, they and their elderly and disabled customers will be severely injured by the new Rule, as will many state governments. If the third-party employers attempt to comply by paying overtime for current hours worked by their companionship employees, then they will lose customers who do not want to have to pay higher rates for overtime in the absence of state Medicaid funding; and the providers will not be able to recover their costs for overtime that is not covered by Medicaid. If the providers attempt to comply by reducing work hours, they will nevertheless lose customers who do not want to allow additional caregivers into their homes. The providers will also face irreparable employee

dissatisfaction from workforces whose overall take home pay will be <u>reduced</u> as a result of fewer work hours.

Taken as a whole, as the district court properly found, the industry model that has been so successful in providing quality, affordable home care to people in dire need of such services will be irreparably harmed. At a minimum, the sudden disruption of an entire industry on short notice after employers, consumers and state governments were informed that the rule had been vacated, is unnecessary and punitive. The Department's previous rule was in effect for 40 years. If this Court's opinion is upheld by the Supreme Court, then the new Rule will no doubt promptly take effect for years into the future. Staying the mandate for the brief period of time necessary for the Supreme Court to review the case is the most appropriate resolution of this litigation, insuring certainty for the entire industry and the millions of elderly and disabled consumers who depend on its vital services.

## CONCLUSION

For the reasons set forth above, the Court should stay its mandate pending Appellees' filing of a petition for writ of certiorari to the Supreme Court.

Respectfully submitted,

/s/ *Maurice Baskin*

| | |
|---|---|
| William A. Dombi | Maurice Baskin |
| Center For Health Care Law | Littler Mendelson, P.C. |
| 228 Seventh St, SE | 1150 17th Street N.W. |
| Washington, D.C. 20003 | Suite 900 |
| 202.547.5262 | Washington, DC 20036 |
| wad@nahc.org | 202.842.3400 |
| | mbaskin@littler.com |

Attorneys for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2015, I electronically filed the foregoing document with the Clerk of the Court using the appellate CM/ECF system, which sent notice to the participants and parties in this case.

*/s/ Maurice Baskin*