———————————

Nos. 15-5018

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

HOME CARE ASSOCIATION OF AMERICA, *et al.*,
PLAINTIFFS-APPELLEES,
v.
DAVID WEIL, *et al.*,
DEFENDANTS-APPELLANTS.

———————————

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA

———————————

**REPLY TO OPPOSITION TO MOTION FOR STAY OF MANDATE
PENDING FILING OF PETITION FOR WRIT OF CERTIORARI**

| | |
|---|---|
| William A. Dombi<br>Center For Health Care Law<br>228 Seventh St, SE<br>Washington, D.C. 20003<br>202.547.5262<br>wad@nahc.org | Maurice Baskin<br>Littler Mendelson, P.C.<br>1150 17th Street N.W.<br>Suite 900<br>Washington, DC  20036<br>202.842.3400<br>mbaskin@littler.com |

Attorneys for Appellees

Appellees Home Care Association of America, *et al.*, hereby reply to the Department's opposition to Appellees' Motion For Stay of Mandate. The Department opposition is without merit as it attempts to set an impossibly high bar for Appellees' motion, a standard that is at odds with established precedent and Rule 41.

As correctly noted in Appellees' motion, the proper grounds for granting a motion to stay the mandate are that a certiorari petition will present substantial questions and that there is good cause for the issuance of a stay. Under the "substantial question" standard applied by this Court (and others), a stay of the mandate is warranted if there is a "reasonable probability" of the Supreme Court granting certiorari. As the Supreme Court has further held: "[The defendant] need not show that he should prevail on the merits…. Rather, he must demonstrate that the issues are debatable among jurists of reason…." *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983), and other cases cited in Appellees' Motion at p. 4. The "good cause" ground for the stay is met where Appellees can show a likelihood of irreparable harm and/or that a stay is in the public interest. *Id*. at p. 8. Appellees' motion fully satisfies both elements of the recognized standard for staying the Court's mandate. The Department's opposition misapplies the standard by imposing new and baseless requirements.

2

### 1. Contrary to the Department's Opposition, Appellees Have Shown That Their Certiorari Petition Will Present Substantial Questions.

First as to the "substantial question" test, the Department inappropriately calls upon Appellees to reargue their appeal as if this motion were a petition for rehearing or the petition for certiorari itself. The Department thus criticizes Appellees' motion for making "no attempt to square their position with the Supreme Court's reasoning, which they fail to quote" and for "misplac[ing]" "reliance on the district court's ruling." (Opp. at p.2). To the contrary, Appellees have previously fully briefed their position that the Supreme Court's reasoning in *Coke* did not address the circumstances or unprecedented exclusionary language of the Department's new Rule, and it should be unnecessary to again quote the Supreme Court's holding in this motion as the opposition unreasonably demands. Likewise, no purpose is served by rearguing the "various subsidiary points" of the Court's opinion in order to establish that substantial questions exist with regard to Congress's legislative intent, both before and after the *Coke* decision, contrary to the Department's opposition.

In any event, pursuant to the plain language of Rule 41 and the precedent cited in Appellees' motion, Appellees have properly identified the

following non-exclusive list of substantial questions, as to which reasonable jurists (the district court and the appeals court panel) have disagreed:

- Whether the Supreme Court intended by its opinion in *Coke,* which upheld the previous companionship exemption rule, to allow the Department to deny the entire class of third-party employers the right to avail themselves of a Congressionally mandated exemption whose terms apply to their employees, using an exclusionary method never before approved by Congress or the courts in the 77-year history of the FLSA.

- Whether Congress intended to authorize the Department to discriminate against more than 90% of the home care industry by excluding third party employers from availing themselves of the statutory exemptions for companion and live-in caregivers in a manner never before approved by Congress or the courts in the history of the Act.

- Whether the Department's discriminatory new Rule constitutes an unreasonable and arbitrary implementation of the statutory exemptions in light of the Department's failure to address Congress's goal of maintaining affordability of home care, the absence of state funding for the increased costs associated with the new Rule, and the failure to explain how the job duties of third party employees differ at all from other exempt caregivers.

(Motion at pp. 4-8.).

The reasonable probability that the Supreme Court will grant certiorari to consider these questions is further bolstered by the Supreme Court's previous finding in the *Coke* case that the scope of the home care exemptions is an important and cert-worthy issue. The Department does not dispute that by granting certiorari in *Coke*, and by rejecting many of the

4

contentions relied on by the Department in the new Rule, the Supreme Court has demonstrated that it considers the foregoing issues to be important and worthy of granting certiorari. For each of these reasons, the Court should find that Appellees' certiorari petition will present substantial questions warranting a stay of the mandate.

### 2. Also Contrary to the Department's Opposition, Appellees Have Shown That Good Cause Exists To Stay The Mandate.

Appellees pointed out in their motion that the district court previously found irreparable harm to the plaintiffs based upon sworn submissions of affidavit testimony in support of a temporary restraining order last January (Motion at p.9). The Department's opposition cites no precedent for asserting that the district court's finding was "overtaken" by the court's ruling on summary judgment. (Opp. p. 3). To the contrary, the showing required to establish irreparable harm was and remains a separate issue from the question addressed by the court on summary judgment, or in this Court's opinion, which was whether the Department's action in attempting to implement the new Rule was arbitrary and capricious.

Equally unavailing is the Department's claim that Appellees' district court filings do not support their claim of irreparable harm. The Department cites a California 2014 budget resolution that purported to pay overtime to

home care workers. (Opp. at p.3). But the previously submitted affidavit of Jacquie Dillard-Foss, filed <u>after</u> the 2014 budget resolution, explained that the funds available in California for overtime compensation were millions of dollars fewer than needed to offset the estimated cost increase of home care services. (Dist. Ct. Dkt. #28, Foss Affidavit, Par. 11).

Likewise in New York, contrary to the Department's opposition at p. 4-5, the previously submitted sworn testimony from association executive Al Cardillo establishes that the state's claims of preparedness for the impact of the new Rule are hollow. Indeed, the *amicus* brief relied on by the Department's opposition does not address or refute Cardillo's testimony. The New York state *amici* said only that they were "working to comply with the rule within the parameters of their budgets" *not* that they were yet prepared to provide the necessary funding required to allow elderly and disabled consumers to retain access to home health care under the new Rule. *Amicus* Br. for New York *et al* at 23-24.

The Department's focus on the largest states also ignores the reality that millions of elderly and disabled consumers of home care services are located in states that are indisputably not prepared to fund the cost increases associated with the new Rule. *See* Amicus Br. for Kansas et al; see also Dist. Ct. Dkt. #23, Bruffett Affidavit. Additional testimony as to the adverse

6

impact of the new Rule in the many states that do not have funds available to pay for overtime is presented in the attached newly sworn declaration of Bruce Darling, on behalf of the disability rights organization ADAPT. Mr. Darling reports that many states are responding to the additional costs imposed by the new Rule by cutting hours or programs, citing examples from Kansas, Texas, and Arkansas. (Darling Aff., Attachment #1 to this Motion, at Par. 7). *See also Amici* Brief of ADAPT and the National Council on Independent Living, at pp. 5-29 ("The new rule will cause significant and widespread disruptions to the provision of Medicaid long-term services and supports." * * * "[T]he vast majority of states do not require overtime pay for CDPA attendants and have not allocated funding to cover the additional cost of overtime."); and *Amici* Brief of States of Kansas, et al at pp. 22-28. ("[C]ontinuity of care will be practically impossible to obtain for Kansans, especially those living in rural Kansas."). *See also* National Assoc. of Medicaid Directors (NAMD) Comment, WHD-2011-0003-9179 at 3.

The Department's opposition blithely states that "the fact that compliance with a federal regulation may increase Medicaid costs is not a basis to delay the implementation of a valid federal rule." (Opp. at p.5). Yet the Department has just announced on its own initiative that it intends to

7

delay enforcement of the new Rule by 30 days after the mandate issues. *See* 80 Fed. Reg. 55029 (Sept. 14, 2015), referred to in the Department's Motion to Expedite the Mandate, at p. 3.[1]

Unfortunately, the Department's delay in enforcement will not mitigate the problems created for employers by the new Rule, because the Rule will be immediately enforceable by private parties and plaintiff attorneys once it goes into effect. The Department's proposed delay in enforcement nevertheless constitutes an admission that immediate enforcement of the new Rule will cause harmful disruption of the home care industry, and that such disruption is not in the public interest. For this reason as well, this Court should find there is good cause to stay its mandate in order allow the Supreme Court to consider the substantial questions that will be raised by Appellees' Petition for Certiorari before the new Rule takes effect.

---

[1] The Department previously announced that there would be a <u>six-month</u> delay in enforcement of its new Rule prior to the Rule's original January 1, 2015 effective date. *See* 79 Fed. Reg. 60974 (Oct. 2014). Since efforts to achieve compliance or additional funding came to a halt after the district court vacated the Rule in January, there is no rational basis for cutting short the originally planned non-enforcement period nor for expediting the mandate at all.

## Conclusion

For the reasons set forth above and in Appellees' Motion, the Court should stay its mandate pending Appellees' filing of a petition for writ of certiorari to the Supreme Court.

                                                     Respectfully submitted,

                                                     *s/ Maurice Baskin*

William A. Dombi                     Maurice Baskin
Center for Health Care Law         Littler Mendelson, P.C.
228 Seventh St, SE                 1150 17th Street, N.W.
Washington, D.C. 20003            Suite 900
202.547.5262                           Washington, DC 20036
wad@nahc.org                      mbaskin@littler.com

                                                   Attorneys for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, I electronically filed the foregoing document with the Clerk of the Court using the appellate CM/ECF system, which sent notice to the participants and parties in this case.

<em>/s/ Maurice Baskin</em>